CALEB CHASE *et al.* v. H. G. BONHAM *et al.*

FINDINGS — *Weight of Evidence — Judgment, not Disturbed.* Where the findings of the jury are favorable to the defendants, and are based wholly upon depositions, one witness deposing to statements which if true would be sufficient to justify findings for the plaintiffs, and another denying them substantially and fully, a judgment for defendants will not be disturbed by this court for the reason the jury erred in their findings. The burden of proving the statements rested upon plaintiffs, and they were compelled to establish the same by a preponderance of evidence before the court would have been justified in finding in their favor.

*Error from Lyon District Court.*

IN September, 1886, *H. G. Bonham* was engaged in the grocery business at Emporia, Kansas; he had been in the

business about two years.   Upon the 25th of September he purchased of plaintiffs in error, who were plaintiffs below, $477.25 of Chase & Sanborn's coffee on a credit of sixty days. On the 25th of October Bonham executed a chattel mortgage on his entire stock of groceries and fixtures, including this coffee, to the First National Bank of Emporia, to secure an indebtedness to the bank of $885.31.   The day following he made a general assignment for the benefit of his creditors; his indebtedness at that time was $2,885.   The sum owing the bank was paid in full before the commencement of this action. The plaintiffs replevied the coffee they sold the defendant. The plaintiffs' testimony was offered for the purpose of show- ing that the coffee in question was sold upon a credit obtained by a false statement of Bonham as to his financial standing, made in April preceding the sale, and upon this evidence the plaintiffs sought to maintain their action.   The case was tried by the court and a jury, and a general verdict was rendered for defendants.   The jury made special findings of fact, which are as follows:

"1. Is it not a fact that sometime in the spring of 1886 — the last of March, or in April — the defendant Bonham made a statement of his financial condition and the condition of his business to Mr. Place, the agent of plaintiffs, for the purpose of establishing his credit with plaintiffs, and to induce them to sell him goods?   A. No.

"2. Is it not a fact that in that statement he told Place that his business was in a flourishing condition, and that he did not owe anything except his bills to the wholesale houses of whom he bought goods, and which were not due?   A. No.

"3. Is it not a fact that, at the time of making this state- ment, and during every day in the months of April, May and June, 1886, he was indebted to the First National Bank, and that his bank account was during all of that time continuously overdrawn?   A. Yes.

"4. Did not Bonham's indebtedness to the bank keep con- tinually increasing through the summer and fall of 1886, until at the time of his failure, October, 1887, it had reached the sum of $885.31?   A. Yes.

"5. Did not Bonham, in his statement to establish his credit with plaintiffs' agent, Place, overstate the amount of

the capital with which he commenced business, by placing it at $700, when in fact it was about $435? A. No.

"6. Did not Bonham, in his statement to Place to establish his credit, state that he had made about $1,700 in his business? A. No.

"7. How much did Bonham owe at the time of his failure on October 26, 1886? A. $2,795.83.

"8. Of this amount, how much did he owe to the bank, and how much to plaintiffs? A. To the bank, $885.31; to plaintiffs the sum of $569.75.

"9. Did not Bonham wholly fail and omit to disclose his true financial condition to plaintiffs' agent at the time of purchasing the goods in controversy? A. We don't know.

"10. Was not Bonham insolvent at the time of purchasing the goods of plaintiffs, which are now in controversy? A. No.

"11. Is it not a fact that plaintiffs' agent sold the goods in controversy to Bonham in reliance upon his financial condition, made the previous April, at the time Bonham's credit was established with plaintiffs' agent? A. No."

Judgment for the defendants, at the October term, 1887. The plaintiffs bring the case to this court.

*Kellogg & Sedgwick*, for plaintiffs in error.

*J. Jay Buck*, for defendants in error.

Opinion by HOLT, C.: The plaintiffs complain of the instructions refused and given, and that certain of the findings of fact are not supported by the evidence. The court's instructions are sufficiently full and definite, and correctly state the law applicable to the evidence. The instructions refused were substantially incorporated in the charge of the court. The assignee, of course, had the same rights, no better, than Bonham, and if this action could have been successfully maintained against Bonham in case no assignment had been made, it can also be successfully maintained against the assignee. The record does not contain all the evidence introduced at the trial, but the case-made shows that findings 3, 5, 6, 9, and 11, are made wholly on evidence introduced by depositions. Any objection made to the other findings will not be con-

sidered, as they may have been supported by testimony not brought here.

The plaintiffs say, "that by reason of the fact that all the testimony referring to said findings being in writing and here before this court in the same manner that it was before the jury, this court is in a condition to determine with accuracy whether the findings of the jury are such as ought to have been made under the evidence." The only evidence of the statements made by Bonham in April is given by George G. Place, the agent of plaintiffs. Testifying of what Bonham told him, he says:

"He stated that in the fall of 1884 he started in business with some seven hundred and odd dollars; that he did not take an inventory in January, 1885, but did in January, 1886, fourteen months after starting; that he found that he had made a trifle over $1,700 during that fourteen months; that he had been very conservative in giving credit, and had lost only a few dollars; that he sold on time only to those who settled their bills every thirty days; that he owed nothing except regular merchandise bills not yet due, and that his business was in a flourishing condition. On the strength of the above statement I gave him sixty days' credit. He made the statement in April, 1886; never altered the statement, and failed in October of that year."

Bonham himself testified in his deposition, speaking of what he told Place at the time of the purchase in September:

"I stated to Mr. Place that I was doing business on a small capital, and that I was endeavoring, by watching my purchases and collections, to meet my bills promptly at maturity. . . . There was no statement made regarding solvency or insolvency, or ability or inability to pay, except as I have before stated; that I was doing business on a small capital, and was endeavoring to hold my purchases down as close as possible that I might meet my obligations promptly."

On cross-examination, in answer to a question, he said:

"I did not tell him [Place] how much capital I had invested in the business; the only thing that I ever did tell him in regard to capital was that I was doing business on a small capital; no amount of capital was ever mentioned.

. . . I never told him whether I was making or losing money. . . . I did make some money a part of the time I was in business; during the summer and early part of the fall of 1886, my trade dropped off; to such an extent did it drop off that I did not pay expenses."

It is shown in the depositions that Place urged Bonham to buy a large bill, because of the Soldiers' reunion about to be held at Emporia; there came a week of rain, and but few people attended the reunion. The depositions of Place and Bonham were taken about the same time—one at Boston, Massachusetts, and the other at Wichita, Kansas. Neither of the parties testifying could have seen the deposition of the other, and hence there was no categorical denial of the facts stated in óne deposition by the person giving his evidence in the other. The testimony of Place related more especially to the conversation he had with Bonham in April, 1886; the deposition of Bonham more to the details of the sale of the coffee in September, and yet there is enough in the statement of Bonham to show that he denied ever having a conversation like the one testified to by Place in April, 1886. The burden of proof rested upon the plaintiffs to establish their claim by a preponderance of evidence. The testimony of Place was sufficient, if undisputed, to have fully satisfied the requirements of this rule; but it is contradicted by Bonham, not explicitly and minutely, for the reason that his attention was not called to it directly, yet substantially and fully. Place said that he told him the exact amount of capital he had invested in the business; Bonham testified that he never told him the amount of capital he had invested, only that it was small; Place said also that he said he had made $1,700 in the business; trusted those only who settled every thirty days; owed nothing except for merchandise on bills not yet due, and that his business was prospering. Bonham testified that he never told him whether he was making or losing money; whether he was solvent or insolvent, and never spoke of his ability or inability to pay, except that he said he was doing business on a small capital and ran small

bills so that he could meet them promptly. Under this evidence, even by the rule contended for by plaintiffs, the judgment is correct: we recommend that it be affirmed.

By the Court: It is so ordered.

All the Justices concurring.